UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UBS FINANCIAL SERVICES, INC.,                    INTERPLEADER PLAINTIFF

v.                                               CIVIL ACTION NO. 3:15-CV-00887-CRS

LOUIS KAUFMAN, DEBRA KAUFMAN, and
CORNERSTONE INDUSTRIES,                          INTERPLEADER DEFENDANTS

Memorandum Opinion

I. Introduction

UBS Financial Services, Inc. ("UBS") brought this interpleader action against Cornerstone Industries ("Cornerstone"), Louis Kaufman, and Debra Kaufman (together, the "Interpleader Defendants"). Compl. 1, ECF No. 1. Louis Kaufman and Debra Kaufman (the "Kaufmans") jointly own a UBS brokerage account (the "Joint Account"). *Id.* at 2. UBS alleges that the Interpleader Defendants have asserted adverse and conflicting claims to the Joint Account. *See id.* at 8.

Cornerstone filed a cross-claim against the Kaufmans invoking supplemental jurisdiction. Answer & Cross-cl. 3, ECF No. 11. Cornerstone seeks garnishment enforcement, a claim for fraudulent conveyance, and asks for a declaration as to its entitlement to all funds in the Joint Account. *See id.* at 5 – 6.

Debra Kaufman moves to dismiss the interpleader action and Cornerstone's cross-claim for lack of subject-matter jurisdiction. Mot. Dismiss 1, ECF No. 15. For the reasons below, the Court will grant the motion. The Court will dismiss UBS's interpleader complaint and Cornerstone's cross-claim for lack of subject-matter jurisdiction.

1

II.     Procedural History

The parties come before the Court after lengthy, and continuing, litigation in the trial and appellate courts of the Commonwealth of Kentucky and the Bankruptcy Court in this district. The Court will briefly recount the facts relevant to UBS's interpleader action.

A.     The First Garnishment Order

On August 13, 2013, after Cornerstone won a jury trial verdict, a Jefferson County Circuit Court judge entered a final judgment against Louis Kaufman for about $1.8 million ("Circuit Court Judgment").  Final J. 1 – 2, ECF No. 18-1.  On October 21, 2013, Debra Kaufman filed for divorce from Louis Kaufman in Jefferson County Family Court.  Verified Pet. Dissolution Marriage, ECF No. 18-3.[1]  On October 24, 2014, the Circuit Court issued a garnishment order against Louis Kaufman, compelling the account holder, UBS, to withhold about $1.8 million (the "First Garnishment Order").  1st Garn. Order, ECF No. 18-2.  Debra Kaufman was not a party to the Circuit Court Judgment or the First Garnishment Order.  Def.'s Resp. Opp. Mot. Dismiss 7, ECF No. 18.

B.     The divorce proceedings and marital settlement agreement

On February 11, 2014, Cornerstone moved to intervene in the Kaufmans' divorce, arguing that the divorce was a sham to avoid the Circuit Court Judgment.  Mot. Intervene, ECF No. 18-4; 1st Fam. Ct. Order 1, ECF No. 15-2.  Family Court Judge Paula Sherlock granted the motion to intervene.  See 1st Fam. Ct. Order.

On March 3, 2014 (after the Circuit Court Judgment but before the First Garnishment Order), the Kaufmans filed a marital settlement agreement in Family Court.  Kaufman Settm't

---

[1] Debra Kaufman's memorandum says she filed for divorce on August 13, 2013, and the Family Court granted the divorce on March 4, 2013.  Def.'s Mem. Supp. Mot. Dismiss 1, ECF No. 15-1.  These dates appear to be errors.

2

Agrm't 4, ECF No. 18-5. Under the marital settlement agreement, Debra Kaufman would receive about $800,000 from the Joint Account. *Id.*[2] Louis would receive the balance of the Joint Account. *Id.*[3]

C. The bankruptcy proceedings

On October 31, 2014 (after the Kaufmans filed the marital settlement agreement and after Louis Kaufman received the First Garnishment Order), Louis Kaufman filed a petition for bankruptcy in this district. Notice of Bankr. Case Filing, ECF No. 1-3. The bankruptcy court imposed an automatic stay over the Joint Account and Louis Kaufman's individual account. *See* Letter Dec. 9, 2014, ECF No. 1-5. On December 10, 2015, the bankruptcy court dismissed Louis Kaufman's petition, finding Louis Kaufman's debt to Cornerstone non-dischargeable. *In Re: Louis A. Kaufman*, ECF No. 1-9.

D. The First Family Court Order

On August 11, 2015, Judge Sherlock made a finding that the marital settlement agreement was not unconscionable as between the Kaufmans, and based on that finding, Judge Sherlock held that the marital settlement agreement was binding on the Family Court (the "First Family Court Order"). 1st Fam. Ct. Order.[4] Judge Sherlock denied Cornerstone's motion to set

---

[2] Specifically, Debra Kaufman would receive $803,415 from the Joint Account, reflecting $393,012 in non-marital interest and a $410,400 transfer from Louis Kaufman. Kaufman Settm't Agrm't 4.

[3] The marital settlement agreement also provided Louis Kaufman the right to visit the family dog twice a day at Debra Kaufman's residence: "The parties have a dog and 'Mingo' is his name." Kaufman Settm't Agrm't 4. The Court wonders why the parties did not seize the opportunity to say, "Mingo is his name-o."

[4] Judge Sherlock based this ruling on Ky. Rev. Stat. § 403.180(2) which says, "[T]he terms of the separation agreement, ... are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable."

3

aside the marital settlement agreement: "The collection of debts to third parties is not the purview or responsibility of this Court." *Id.*

### E. The Second Garnishment Order and the Second Family Court Order

On December 11, 2015 (after the bankruptcy court dismissed Louis Kaufman's petition), UBS received another garnishment order against Louis Kaufman for about $1.8 million (the "Second Garnishment Order"). 2nd Garn. Order, ECF No. 1-11. On December 14, 2015, Louis Kaufman's counsel requested that UBS transfer securities from the Joint Account to a new account in Debra Kaufman's name. *See* Notice of Dismissal, ECF No. 1-10; *see also*, Letter Oct. 1, 2015, ECF No. 1-7. On December 22, 2015, Judge Sherlock ordered that "Debra Kaufman[] be allowed to transfer any and all marital and non-marital funds as Ordered by this Court on August 12, 2015" (the "Second Family Court Order"). 2nd Fam. Ct. Order, ECF No. 15-3.[5]

### F. Interpleader action and current appeals

On December 17, 2015, UBS filed this federal interpleader action because "Cornerstone, on the one hand, and Mr. Kaufman and Mrs. Kaufman, on the other hand, have asserted adverse and conflicting claims to the assets being held by UBS" in the Joint Account. Compl. 8.[6]

Cornerstone has appealed the First and Second Family Court Orders to the Kentucky Court of Appeals. *See* Original Proceeding & Pet. Writ of Prohibition and/or Mandamus, ECF No. 18-7. Louis Kaufman has appealed the Circuit Court Judgment against him to the Kentucky

---

[5] The First Family Court Order does not explicitly grant Debra Kaufman the right to transfer marital and non-marital funds, but it does make a finding that the marital settlement agreement is binding upon the Family Court. *See* 1st Fam. Ct. Order.

[6] Throughout the interpleader complaint, UBS uses the term "UBS Accounts" to refer to both the Joint Account and Louis Kaufman's individual account. *See, e.g.*, Compl. 3. However, the only disputed account is the Joint Account because Debra Kaufman does not assert any right to Louis Kaufman's individual account. Def.'s Mem. Supp. Mot. Dismiss 2 n.2, ECF No. 15-1.

4

Court of Appeals. Def.'s Mem. Supp. Mot. Dismiss 3; *see also*, Def.'s Reply Supp. Mot. Dismiss 3 n.6, ECF No. 22.

  III. <u>Subject-matter jurisdiction for UBS's interpleader claim</u>

Debra Kaufman moves for dismissal of UBS's interpleader action for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).[7]

Federal courts are courts of limited jurisdiction. As always, the Court must determine whether subject-matter jurisdiction exists. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). The party invoking federal jurisdiction has the burden of proving jurisdiction exists. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). The Court must dismiss if it determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

The Court will first address whether subject-matter jurisdiction exists over the interpleader action. The Court will conclude that UBS did not meet its burden in showing that subject-matter jurisdiction exists over the interpleader action. Then, the Court will address whether subject-matter jurisdiction exists over Cornerstone's cross-claim. The Court will conclude that Cornerstone's claims invoking supplemental jurisdiction must also be dismissed.

  A. <u>Whether the Court has subject-matter jurisdiction under the interpleader statute</u>

UBS's interpleader complaint asserts subject-matter jurisdiction under the interpleader statute, 28 U.S.C. § 1335. Compl. 2. UBS's interpleader complaint does not mention Federal Rule of Civil Procedure 22, though it does assert that diversity of citizenship exists under 28 U.S.C. § 1332(a)(1). *See id.* UBS is a Delaware firm with its principal place of business in New Jersey; Debra Kaufman and Louis Kaufman are Kentucky citizens; and Cornerstone is a

---

[7] Louis Kaufman has not joined the motion to dismiss.

Kentucky corporation with its principal place of business in Indiana. *Id.* at 1 – 2; *accord*, Cross-cl. 3 (asserting same citizenship).

Statutory interpleader requires only minimal diversity, or diverse citizenship between at least two adverse claimants. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). The Court does not consider the disinterested stakeholder's citizenship in statutory interpleader. *Mudd v. Yarbrough*, 786 F.Supp.2d 1236, 1242 (E.D. Ky. 2011); *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F.Supp.2d 689, 695 (E.D. Ky. 2002).

The Court does not consider UBS's citizenship in determining whether minimal diversity exists for statutory interpleader because UBS is a disinterested stakeholder. Cornerstone is a citizen of Indiana because its principal place of business is in Indiana. *See* 28 U.S.C. § 1332(c). Cornerstone is also a citizen of Kentucky because it is a Kentucky corporation. *See id.* There is no diversity among the Interpleader Defendants, who are claimants to the Joint Account, because Debra Kaufman, Louis Kaufman, and Cornerstone are all Kentucky citizens. Thus, the interpleader complaint fails to satisfy the minimal diversity required for statutory interpleader. The Court is without jurisdiction to hear the interpleader claim to the extent that it asserts a grant of jurisdiction under 28 U.S.C. § 1335.

Although the interpleader complaint lacks sufficient minimal diversity for statutory interpleader, "Rule 22[a](1) provides a procedural framework for interpleader actions, but *it does not confer subject matter jurisdiction on federal courts*." *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 (6th Cir. 1997) (emphasis added). "Thus, for interpleader to be proper under Rule 22[a](1), the action must be based on a statutory grant of jurisdiction." *Id.*

      B. <u>Whether diversity jurisdiction exists over the interpleader action</u>

Under Article III, "The judicial power shall extend to all cases, in Law and Equity ... between Citizens of different States." U.S. Consti. Art. III § 2, cl. 1. In *Tashire*, the Supreme Court *sua sponte* addressed whether the minimal diversity requirement of statutory interpleader conflicted with the Article III's diversity requirement. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). The Supreme Court concluded that the interpleader statute's minimal diversity requirement was constitutional because "Article III poses no obstacle to the legislative extension of federal jurisdiction, founded on diversity, *so long as any two adverse parties are not co-citizens*." *Id.* at 531 (emphasis added). However, *Tashire* does not speak to the issue here: whether diversity jurisdiction exists in a rule interpleader action when the claimants to the disputed fund are all citizens of the same state, litigating in their home state.

Under the diversity statute, the Court has original jurisdiction "over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—citizens of different States." 28 U.S.C. § 1332(a). "Since its enactment, we have interpreted the diversity statute to require 'complete diversity' of citizenship." *Carden v. Arkoma Associates*, 494 U.S. 185, 187 (1990); *see also*, *Strawbridge v. Curtiss*, 3 Cranch 267 (1806) (Marshall, C.J.) ("If there be two or more joint plaintiffs, and two or more joint defendants, each of the plaintiffs must be capable of suing each of the defendants, in the courts of the United States, in order to support the jurisdiction."), *overruled in part* by *Louisville, Cincinnati, & Charlestown R.R. Co. v. Letson*, 43 U.S. 497 (1844).

The traditional theory justifying diversity jurisdiction asserts that providing a federal forum protects out-of-state residents from bias in state courts. Erwin Chemerinsky, *Federal Jurisdiction*, 6th ed. § 5.3.2. Even if the bias does not exist, the theory goes, out-of-state litigants, and especially out-of-state defendants, benefit from a federal forum where they may not

7

perceive bias. *Id.* Requiring complete diversity between the adverse parties may alleviate these concerns.

Here, the stakeholder, UBS, is a citizen of New Jersey because its principal place of business is in New Jersey. *See* 28 U.S.C. § 1332(c). UBS is also a citizen of Delaware because it is a Delaware Corporation. *See id.* Debra Kaufman and Louis Kaufman are Kentucky citizens, and Cornerstone is a citizen of both Indiana and Kentucky. *See* discussion *supra* Part III(A).

Under the traditional diversity analysis, the interpleader plaintiff, UBS, has demonstrated diversity of citizenship and adversity against the Interpleader Defendants because it is diverse from all of the Interpleader Defendants, and the Interpleader Defendants may assert competing claims against UBS. The amount in controversy exceeds $75,000 because the Joint Account had a fair market value of $963,654.55 as of December 16, 2015. Compl. 2 – 3. However, the nature of interpleader compels the Court to look beyond the labels of "plaintiff" and "defendant" in determining *whether diversity exists between the adverse parties* in an interpleader action: the claimants.

The Sixth Circuit has not addressed whether an out-of-state plaintiff may file a federal interpleader complaint against claimants who are all citizens of the forum state. The only published district court case in this circuit to have mentioned the issue expressly declined to decide whether diversity of citizenship existed. *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F.Supp.2d 689, 696 (E.D. Ky. 2002) (noting that stakeholder did not sufficiently allege amount in controversy for diversity statute but expressing no opinion on whether diversity of citizenship existed).

8

The stakeholder's fear of double or multiple liability is at the heart of every interpleader action. The stakeholder is stuck between the proverbial rock and a hard place. This is why we have interpleader: the stakeholder holding the money pot fears being sued from multiple angles all at once. However, here, the stakeholder, UBS, does not deny liability for the funds in its hands; it simply fears paying the wrong claimant or claimants. So it seeks only to pay the funds into court, be dismissed, and allow the non-diverse competing claimants to fight among themselves over its proceeds.

Rule interpleader is no more than a procedural device used to address this legal quagmire. For a disinterested stakeholder like UBS, it does not matter who is the rightful owner. It matters only that it, having paid the funds into court, is allowed to exit the battle. When the stakeholder is disinterested, adversity exists only between the claimants disputing ownership of the fund. If the stakeholder and the claimants are all diverse, this poses no problem to federal jurisdiction because diversity between all the adverse parties exists. But when the stakeholder is disinterested and the claimants are not diverse, diversity between the adverse parties does not exist.

The adverse parties in every properly plead interpleader action are the claimants asserting competing or conflicting claims to the same fund. Their diversity is what matters. Their diversity ensures that the parties adverse to each other, whose ownership rights are being litigated in a federal forum, are not citizens of the same state. Altogether, in this situation, it makes far more sense to consider whether diversity exists on the interpleader defendants' side of the "v" rather than "across the v," which would consider the citizenship of a party who does not claim ownership of the fund. Here, there is no diversity of citizenship between the Interpleader Defendants, whose interests are actually adverse to each other. The lack of diversity between the

adverse parties leads the Court to conclude it lacks diversity jurisdiction over UBS's interpleader action.

The underlying facts of this litigation highlight the need to consider only the citizenship of the adverse parties: the claimants. The Interpleader Defendants are all Kentucky citizens litigating in their home state. Their claims to the Joint Account all arise under Kentucky law. Cornerstone's claim to the Joint Account arises out of the Circuit Court Judgment and First and Second Garnishment Orders, all issued by a Kentucky Circuit Court judge. Debra Kaufman's claim to the Joint Account arises out of the First and Second Family Court Orders, both issued by a Kentucky Family Court judge. Whether the First and Second Garnishment Orders take priority over the First and Second Family Court Orders, or vice versa, are purely issues of Kentucky law. The only non-Kentucky aspect of this interpleader action is that an out-of-state firm, UBS, holds the Joint Account, but is willing to pay it into Court.

Finding diversity by considering the citizenship of UBS, a disinterested stakeholder, makes little sense. There is no principled reason to disregard the disinterested stakeholder's citizenship in statutory interpleader and then rely on the same disinterested stakeholder's citizenship in rule interpleader. It is nonsensical to apply two different analyses—one disregarding the disinterested stakeholder's citizenship and one relying the disinterested stakeholder's citizenship —to answer the same question: does diversity exist in this interpleader action? The Court believes that in this scenario, it should consider only the claimants' citizenship, and not the disinterested stakeholder's citizenship, in determining whether diversity jurisdiction exists in a rule interpleader action. In ignoring the disinterested stakeholder's citizenship, the Court's analysis mirrors the minimal diversity analysis required for statutory interpleader. *See* 28 U.S.C. § 1335(a)(1); *Tashire*, 386 U.S. at 530.

The Court is aware that some circuit courts of appeal have concluded that rule interpleader is proper when the stakeholder is diverse from the claimants, even though the claimants are citizens of the same state. *See*, *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 703 (7th Cir. 2014); *Franceskin v. Credit Suisse*, 214 F.3d 253, 259 (2d Cir. 2000); *Comm'l Union Ins. Co. v. United States*, 999 F.3d 581, 584 (D.C. Cir. 1993); *Leimbach v. Allen*, 976 F.2d 912, 916 (4th Cir. 1992); *CNA Ins. Cos. v. Waters*, 926 F.2d 247, 249 n.5 (3d Cir. 1991); *Aetna Life & Cas. Co. v. Spain*, 556, F.2d 747, 749 (5th Cir. 1977); *Hunter v. Federal Life Ins. Co.*, 111 F.3d 553 (8th Cir. 1940).[8] Generally, these opinions rely on the premise that an otherwise disinterested stakeholder's diverse citizenship may be considered because the disinterested stakeholder may have a vague interest in avoiding future litigation expenses and the risk of multiple liability. *See, e.g.*, *Leimbach*, 976 F.3d at 916. Such fears and risks are why interpleader exists in the first place, but they are not a principled basis upon which to find federal jurisdiction, especially since every state,[9] including Kentucky, provides a mechanism for interpleader.

---

[8] Circular citations abound in the cases that hold diversity jurisdiction exists in a rule interpleader action when the adverse claimants share the same citizenship. For example, the Seventh Circuit Court of Appeals cited *Federal Practice and Procedure* in concluding that diversity existed in an interpleader action in which the claimants were both Illinois citizens and the dispute involved a question of Illinois law. *See Arnold*, 752 F.3d at 704. *Federal Practice and Procedure* likewise cites the *Arnold* opinion for the proposition that rule interpleader requires only "complete diversity of citizenship between the plaintiff-stakeholder and the defendant-claimants." 7 Fed. Prac. & Proc. § 1710.

[9] *See* Ala. Code 1975 § 35-6-21; Alaska R. Civ. P. 22; Ariz. R. Civ. P. 22; Ark. R. Civ. P. 22; Cal. Code Civ. P. § 386; Colo. R. Civ. P. 22; Conn. Gen. Stat. § 52-484; Del. Super. Ct. R. Civ. P. 22; D.C. Code § 28:7-603; Fla. R. Civ. P. 1.240; Ga. Code § 9-11-22; Haw. R. Civ. P. 22; Idaho Code § 5-321; 5 Ill. Comp. Stat. § 2-409; Ind. R. Trial Proc. 22; Iowa Code R. 1.251; Kan. Stat. § 84-7-603; Ky. R. Civ. P. 22; La. Code Civ. Proc. Art. 4652; Me. R. Civ. P. 22; Md. Rule 3-221; Mass. R. Civ. P. 22; Mich. Comp. Laws § 440.7603; Minn. R. Civ. P. 22; Miss. R. Civ. P. 22; Mo. Sup. Ct. R. 52.07; Mont. R. Civ. P. 22; Neb. Rev. Stat. § 25-325; Nev. R. Civ. P. 22; N.H. Rev. Stat. § 382-A: 7-603; N.J. R. Civ. 4:31; N.M. R. 1-022; N.Y. CPLR § 1006; N.C. Gen. Stat. § 1A-1, R. 22; N.D. R. Civ. P. 22; Oh. R. Civ. P. 22; 12 Okla. Stat. § 2022; Or. R. Civ.

Absent binding precedent from the Sixth Circuit Court of Appeals or the United States Supreme Court, the Court is not obliged to follow the conclusory reasoning of the opinions mentioned above. Every stakeholder who has filed a proper interpleader action fears double or multiple liability and seeks to avoid the expense of future litigation. These fears drove the stakeholder to file in interpleader in the first place. These fears cannot be the basis for finding sufficient adversity to justify federal jurisdiction.

Nor can the reasoning of the court of appeals mentioned above be squared with the purported reason underlying diversity jurisdiction: to provide a forum beyond the state courthouse for citizens of different states, and especially out-of-state defendants, to resolve their disputes. Most relevant here, none of the opinions address the propriety of hearing a federal interpleader action when the parties disputing ownership of the fund are citizens of the same state fighting out their state law issues in a federal forum in their home state.

Further, some of the opinions mentioned above use the language of Rule 22 to justify a finding of diversity based on the disinterested stakeholder's citizenship. *See, e.g.*, *Liembach*, 976 F.2d at 917 (discussing stakeholder's substantial interest in avoiding expense of future litigation and risk of "multiple liability."). The Federal Rules of Civil Procedure do not confer federal jurisdiction. Fed. R. Civ. P. 82. Using the language of Rule 22, such as the stakeholder's fear of "multiple liability," as a basis for finding that the stakeholder's interests are adverse to the claimants is using Rule 22 to confer federal jurisdiction. This cannot be done. Ultimately, "Rule 22[a] provides a procedural framework for interpleader actions, but it *does not confer subject-matter jurisdiction on the federal courts*." *Arnold*, 752 F.3d at 704 (emphasis added).

---

P. 31; 13 Pa. Cons. Stat. § 7603; R.I. Super. R. Civ. P. 22; S.C. R. Civ. P. 22; S.D. Cod. Laws § 15-6-22; Tenn. R. Civ. P. 22.02; Tex. R. Civ. P. 43; Ut. R. Civ. P. 22; Vt. R. Civ. P. 22; Va. Code § 8.01-364; Wash. Super. Ct. Civ. R. 22; W. Va. R. Civ. P. 22; Wis. Stat. § 803.07; Wyo. R. Civ. P. 22.

Additionally, the removal statute points to the impropriety of finding diversity jurisdiction when claimants who are citizens of the same state defend in their home state. The removal statute prohibits a home-state defendant from removing to federal court. *See* 28 U.S.C. § 1441(a)(2); *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005) ("Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and *no defendant is a citizen of the forum state*.") (emphasis added). The statutory prohibition against removal by home-state defendants reflects the traditional notion that home-state defendants would have less reason to fear prejudice in their home state. Chemerinsky, *Federal Jurisdiction*, 6th ed. § 5.5. Here, if UBS had filed this interpleader action in Kentucky state court, none of the Interpleader Defendants could have properly removed to this Court because all of them would be defending in their home state of Kentucky. Bias or perceived bias against the Kentucky defendants would be minimal if a Kentucky judge or jury decided the rights of Kentucky citizens being sued by an out-of-state firm.

Furthermore, principles of personal jurisdiction and venue point to the impropriety of finding diversity jurisdiction when claimants who are citizens of the same state litigate in their home state. Personal jurisdiction and venue issues often arise in rule interpleader actions. However, it is axiomatic that the Kentucky courts could constitutionally exercise personal jurisdiction over the Interpleader Defendants, who are all Kentucky citizens. Venue is likely proper in the Kentucky courts because the only non-Kentucky aspect of this case is that UBS is an out-of-state firm, and the Kentucky Rules of Civil Procedure provide for an action in interpleader. *See* Ky. R. Civ. P. 22.

It bears saying again: federal courts are courts of limited jurisdiction. Our constitutional system provides a federal forum for citizens of different states to sue each other. That same system compels a conclusion that it is inappropriate to have citizens of the same state fight out their state law disputes in the federal court in their home state. *Cf. Jones*, 679 F.3d at 360 – 61 (Murnaghan, dissenting).

The Court finds that diversity of citizenship does not exist in this rule interpleader action because the Interpleader Defendants are all citizens of Kentucky. Absent diversity of citizenship, the Court is without jurisdiction to hear UBS's interpleader action.

IV.     Whether the Court has subject-matter jurisdiction over Cornerstone's cross-claim

Supplemental jurisdiction applies to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction requires that the district court have original jurisdiction over a civil action. *Id.*

As discussed above, the Court is without jurisdiction to hear UBS's interpleader action. Without original jurisdiction over the interpleader action, the Court is without jurisdiction to hear Cornerstone's cross-claim.

V.      Conclusion

The Court will dismiss UBS's interpleader action for lack of subject-matter jurisdiction. The Court will dismiss Cornerstone's cross-claim for lack of subject-matter jurisdiction.

The Court will enter an order in accordance with this opinion.

June 7, 2016

Charles R. Simpson III, Senior Judge
United States District Court